UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SCOTT M. HURD,

                        Plaintiff,

   -v-                                      3:10-CV-1116

MICHAEL J. ASTRUE, Commissioner of Social
Security Administration,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

JONATHAN P. FOSTER, ESQ.
Attorney for Plaintiff
407 South Main Street
Athens, PA 18810

OFFICE OF REGIONAL GENERAL COUNSEL    SHEENA V. WILLIAMS-BARR, ESQ.
SOCIAL SECURITY ADMINISTRATION REGION II
Attorneys for Defendant
26 Federal Plaza Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

## I. **INTRODUCTION**

       This matter is brought pursuant to §§ 205(g) & 1631(b)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the Commissioner of Social Security denying the plaintiff's claim for Supplemental Security Income ("SSI") benefits. The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.

## II. BACKGROUND

Plaintiff Scott M. Hurd ("plaintiff" or "Hurd") filed an application[1] for SSI benefits on October 31, 2006, claiming a period of disability beginning on October 11, 2004.[2] His claims were denied and he filed a request for a hearing on March 26, 2007. A hearing was held before an Administrative Law Judge ("ALJ") on March 19, 2009. The ALJ rendered a decision on June 29, 2009, denying plaintiff's claim. Plaintiff appealed the ALJ's decision. On May 12, 2010, the Appeals Council declined further review of the ALJ's decision. Thus, the ALJ's decision became the final decision of the Commissioner.

## III. DISCUSSION

### A. Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determinating whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam) (citing Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002); Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both

---

[1] Hurd's previous application for SSI benefits was denied on July 20, 2005. That determination was not appealed.

[2] At his hearing, plaintiff, through counsel, requested that his alleged onset date be amended to July 21, 2005, the day after his previous application for benefits was denied. R. 25.

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. Id.

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone, 70 F. Supp. 2d at 148 (citing Johnson, 817 F.2d at 986).

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Martone, 70 F. Supp. 2d at 148. "Remand is appropriate where there are gaps in the record or further development of the evidence is needed," such as where new, material evidence has become available. 42 U.S.C. § 405(g); Martone, 70 F. Supp. 2d at 148 (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)). A remand for rehearing directing the taking of additional evidence is warranted only if it is shown that there is new, material evidence "'and that there is good cause for the failure to incorporate such evidence into the record'" at the administrative hearing. Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643-44 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g), as amended in 1980)). Remand may also be appropriate if the Commissioner "misapplies the law or failed to provide a fair hearing." Id. at 644. However, where the underlying administrative decision is not supported by substantial evidence, reversal is appropriate because there would be no useful purpose in remanding the matter for further proceedings.

Id. (reversing and remanding solely for calculation of benefits, subject to determination by the district court of any motion by the agency to remand to consider new evidence); Parker, 626 F.2d at 235 (reversing and remanding solely for calculation and payment of benefits); Simmons v. United States R.R. Ret. Bd., 982 F.2d 49, 57 (2d Cir. 1992) (same); Williams, 859 F.2d at 261 (same).

### B. Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The Administrative Law Judge ("ALJ") must follow a five step evaluative process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. In the first step the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity he is not disabled and he is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged is substantial gainful employment, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination

of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then step three requires that the ALJ determine whether the impairment meets or equals an impairment listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the opinion of a treating physician is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record'" it is given significant weight. Poupore, 566 F.3d at 307 (quoting 20 C.F.R. § 404.1527(d)(2)). However, where the treating physician's opinion is not supported by medical evidence, it is not entitled to significant weight. Id.

The burden of proof with regard to the first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Ferraris, 728 F.2d at 584.

If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for the fifth and final step. Perez, 77 F.3d at 46. This step requires the agency to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that "factors such as a claimant's age, education, and previous work experience" should be evaluated to determine whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy,

heavy, medium, light, and sedentary." Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306.

A claimant may seek review of an adverse decision by the ALJ from the Appeals Council. Perez, 77 F.3d at 44. If review is granted, the decision of the Appeals Council is the final decision of the Commissioner. Id. If review is denied, then the final decision is that of the ALJ. Id. The final decision is judicially reviewable pursuant to 42 U.S.C. § 405(g).

### C. Analysis

Hurd asserts two errors by the ALJ. First, he contends that the ALJ erred in failing to call a vocational expert for testimony. Second, he argues that the ALJ erred in failing to assist in adequate development of the record.

### 1. Vocational Expert

According to plaintiff, the ALJ's decision that jobs in the regional and national economy that plaintiff can do was not supported by substantial evidence because he failed to obtain testimony from a vocational expert.

Where claimant has both exertional and nonexertional limitations, application of the Medical Vocational Guidelines set forth in 20 C.F.R. § 404, Subpt. P, App. 2 ("the grids") may be appropriate. Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988). Application of the grids alone must be evaluated by the ALJ on a case-by-case basis taking into consideration whether a claimant's abilities are significantly limited by nonexertional impairments. Bapp v. Brown, 802 F.2d 601, 605 (2d Cir. 1986). Where the grids "adequately reflect a claimant's condition, then their use to determine disability status is appropriate. Id. However, if there is

a significant diminution of the claimant's abilities, that is, the nonexertional limitation "so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity," the ALJ should obtain the testimony of a vocational expert. Id. at 606. The question of diminution of work capacity can be determined by evaluating whether "the basic mental demands of competitive, remunerative, and unskilled work" as characterized by "the ability, on a sustained basis, to 'understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.'" Sipe v. Astrue, 873 F. Supp. 2d 471, 480 (N.D.N.Y. 2012) (quoting S.S.R. 85-15).

The issue is whether Hurd's abilities were significantly limited by his nonexertional impairments. This is done by determining if the grids adequately reflected plaintiff's condition, and, if not, whether there was a sufficiently significant diminution of his capacity to work that a vocational expert must be consulted to determine if work that he can perform exists in the national economy.

The ALJ found that plaintiff had the RFC to perform: lifting and/or carrying 20 pounds occasionally and ten pounds frequently; stand and/or walk, and sit, six hours out of an eight-hour workday; only occasional climbing, balancing, stooping, kneeling, crouching, and crawling; no tasks requiring binocular vision; avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; understand, remember and carry out simple and some complex tasks; sustain sufficient concentration and focus to maintain regular and continuing employment; occasional interaction with co-workers; work in proximity to co-workers but not in coordination or conjunction with them; and little to no

contact with the general public.[3]  R. 16.  According to this RFC, in terms of exertional capacity the plaintiff can perform light work limited by occasional climbing, balancing, stooping, kneeling, crouching, and crawling.  This limitation does not affect his ability to perform the full range of sedentary work, which is included within the capacity to perform light work so long as no factors (such as sitting for long periods) are present.  See 20 C.F.R. § 404.1567(a), (b).

Based upon an RFC to perform the full range of light work and Hurd's age, education, and work experience (unskilled work), the grids would direct a finding of not disabled.  The Grids Rule 202.20.  Based upon an RFC to perform light work with plaintiff's postural limitations, he can perform the full range of sedentary work.  With an RFC of a full range of sedentary work, the grids would direct a finding of not disabled.  Id. Rule 201.27.  However, the range of light work (with postural limitations)[4] and the full range of sedentary work are limited by plaintiff's environmental and vision restrictions.  Therefore, the grids provide a framework for decision.

Hurd must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants.  This restriction has a minimal impact on the availability of jobs, especially in unskilled, sedentary base.  S.S.R. 85-15, 96-9p.

Plaintiff may have occasional interaction with co-workers; work in proximity to co-workers but not in coordination or conjunction with them; and little to no contact with the general public due to his mental limitations.  Unskilled jobs "ordinarily involve dealing

---

[3] The ALJ found that Hurd suffered from the severe impairments of left eye blindness, post neck surgery, asthma, and bipolar disorder.  R. at 14.  This finding is not challenged.

[4] It is noted that one who can stoop, crouch, crawl, and kneel occasionally has a "virtually intact" occupational base for light and sedentary work.  S.S.R. 85-15.

primarily with objects, rather than with data or people." Id. 85-15. Given Hurd's younger age and high school education, these limitations would not significantly erode his occupational base. See id.

Plaintiff has been blind in his left eye since age 7. He graduated from high school, albeit with the help of one period per day of special education. Additionally, he performed numerous jobs at which he was not hampered by his left eye blindness. His vision in his right eye is 20/20, indicating he would not have difficulty seeing small objects. Further, there is no evidence in the record that Hurd does not have the ability to avoid ordinary workplace hazards. Therefore, the ALJ's determination that plaintiff's left eye blindness does not significantly erode his occupational base is supported by substantial evidence. See S.S.R. 96-9p, 85-15.

Substantial evidence as set forth above supports the ALJ's finding that Hurd's exertional and nonexertional limitations did not significantly erode his occupational base. Therefore, it was appropriate for the ALJ to make a determination of not disabled, following the grids as a framework without obtaining a vocational expert.

### 2. Development of the Record

An ALJ has a duty to develop the administrative record. Perez, 77 F.3d at 47. The ALJ must "'make every reasonable effort to help [the claimant] obtain medical reports'" from the claimant's medical sources so long as permission is granted to request such reports. Id. (quoting 20 C.F.R. § 404.1512(d)).

Hurd argues that the ALJ took selective statements from consultative examiner Dr. Graff without considering that, overall, the report was inconsistent with those selective statements. According to plaintiff, overall Dr. Graff's Psychiatric Review Technique indicated

- 9 -

he has significant limitations in ability to sustain concentration and to work in the same place as co-workers. The ALJ recognized, and incorporated in his analysis, Dr. Graff's opinions. He opined that plaintiff suffered from bipolar disorder substantiated by symptoms, signs, and laboratory findings. See R. at 230. Dr. Graff also opined that plaintiff had mild restrictions of daily living; moderate difficulty maintaining social functioning; and moderate difficulty maintaining concentration, persistence, and pace. Id. at 237. The ALJ, recognizing that Dr. Graff's opinions were not inconsistent with the medical evidence and no treating source gave a contradictory opinion, gave this opinion great weight. Id. at 18. For example, Dr. Warfield, who conducted a consultative psychological examination, opined that plaintiff's attention and concentration were mildly impaired due to plaintiff's psychological disorder and limited intellectual functioning, but that his insight and judgment were fair. Id. at 219–220. Dr. Warfield's opinions were consistent with Dr. Graff's opinions.

Moreover, plaintiff points to no additional treating sources from which records should have been obtained. The ALJ noted the sparsity of medical records. R. at 17. The sparsity of records reflects the plaintiff's failure to continuously seek medical/psychological treatment, see R. at 35–36, rather than any failure on the part of the ALJ to develop the record. Therefore, this claim of error fails.

## IV. **CONCLUSION**

The ALJ properly made a determination of not disabled without obtaining a vocational expert's testimony. The ALJ met his responsibility for developing the record.

Accordingly, it is

ORDERED that

1. The Commissioner's motion for judgment on the pleadings is GRANTED;

2.  The Commissioner's decision denying plaintiff disability benefits is AFFIRMED; and

3.  The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: January 11, 2013
       Utica, New York.